IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **WILLIAM HENRY WILKES** | § | |
| | § | |
| **V.** | § | **A-15-CV-1064-AWA** |
| | § | |
| **CAROLYN W. COLVIN, ACTING** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**MEMORANDUM ORDER AND OPINION**

Before the Court are: Plaintiff's Brief, filed on February 19, 2016 (Dkt. No. 12); Defendant's Reply Brief, filed on March 4, 2016 (Dkt. No. 13); and Plaintiff's Reply to the Commissioner's Brief, filed on March 14, 2016 (Dkt. No. 14). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").[1]

**I. GENERAL BACKGROUND**

On March 11, 2014, Plaintiff William Henry Wilkes ("Wilkes")[2] filed his application for disability insurance benefits under Title II of the Social Security Act alleging he became unable to work beginning on March 31, 2012 due to degenerative joint disease of the knees, hypertension, and sleep apnea. After the Agency denied his application initially and again on reconsideration, Wilkes requested an administrative hearing. Wilkes and his attorney, Shirley Vu, attended the administrative hearing before Administrative Law Judge ("ALJ") Tammy A. Thames on March 24,

---

[1] In a previous filing, the undersigned submitted a Report and Recommendation regarding this action to the Honorable Sam Sparks, United States District Judge. Dkt. No. 18. The Report and Recommendation was filed in error, as the parties had both consented to proceeding before the undersigned Magistrate Judge, and the case had been transferred to the undersigned. Dkt. No. 11. Accordingly, the Court now enters this Order and Opinion, which is substantially similar to the Report and Recommendation.

[2] Wilkes was 62 years-old at the time of the ALJ's decision.

2015.  Wilkes testified that he completed two years of college and also that he was in school at the time of the hearing.  Wilkes's past work experience included nearly twenty-four years in the United States Army, the last seven years of which was spent working as an armament technical warrant officer.  After leaving the Army in 2007, Wilkes worked as a stock control clerk and instructor at General Dynamics, a maintenance equipment technician for ITT Governmental Services, an inventory clerk/analyst at Honeywell Technology, and a training instructor at Raytheon Technical Services.  On April 23, 2015, the ALJ issued a decision finding that Wilkes was not disabled under the Act.  The Appeals Council denied Wilkes's request for review on September 28, 2015, and then, after setting that action aside to consider additional information, again denied his request for review on October 21, 2015.  Wilkes has exhausted his administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if she is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

>     4.  a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and
>
>     5.  if the claimant is unable to perform his previous work as a result of his impairment, then factors such as her age, education, past work experience, and residual functional capacity must be considered to determine whether she can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id*. (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Charter*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id*. at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the

Commissioner. *Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III. THE ALJ's OPINION

The ALJ employed the regulations' five-step sequential evaluation process to determine whether Wilkes was disabled. 20 C.F.R. § 404.1520(a). *See* Tr. 19-24. At the first step, the ALJ determined that Wilkes had not engaged in substantial gainful activity since March 31, 2012. At the second step, the ALJ found that Wilkes suffered from the severe impairments of obesity, degenerative joint disease of the knees, hypertension, and obstructive sleep apnea. At step three, the ALJ found that, considered separately and in combination, Wilkes's impairments did not meet or medically equal the severity criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and thus his impairments were not presumptively disabling. After considering the entire record, the ALJ determined that Wilkes has the residual function capacity to:

> perform light work as defined in 20 C.F.R. § 404.1567(b) except this individual is able to lift or carry twenty pounds occasionally, ten pounds frequently, perform standing or walking for a total of four hours in an eight-hour workday, and sit for a total of six hours in an eight hour workday, with normal breaks; No pushing and pulling activities with the bilateral lower extremities; Occasionally performing climbing of ramps or stairs; Never climbing ladders, ropes or scaffolds; Occasionally perform, stooping, kneeling, crouching or crawling; Avoiding concentrated exposures to hazards, including working near danger machinery and unprotected heights. [sic]

Tr. at 20.

At step four, the ALJ determined that Wilkes was capable of performing his past relevant

work as an inventory clerk/analyst.  Accordingly, the ALJ found that Wilkes was not disabled as defined in the Social Security Act.

### IV.  ANALYSIS

Wilkes argues that the Court should reverse the ALJ's decision because it does not comply with Social Security Ruling ("SSR") 82-62.  Specifically, Wilkes argues that the ALJ's step four analysis is inherently unclear and also fails to reconcile a significant discrepancy in the facts.  The relevant portion of SSR 82-62 reads:

> The rationale for a disability decision must be written so that a clear picture of the case can be obtained.  The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion. . . .  The explanation of the decision must describe the weight attributed to the pertinent medical and nonmedical factors in the case and reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used.

SSR 82-62, 1982 WL 31386.

Wilkes's argument that the ALJ's step four analysis is inherently unclear is rooted in the following language from the ALJ's decision:

> Karyl L. Kuuttila, an impartial vocational expert testified that the claimant's past relevant work as an inventory clerk/analyst, as [Wilkes] described it and as it is described in the DOT, is a medium, semi-skilled job.  The claimant testified that the job of an inventory clerk/analyst required him to be at a desk for six hours of the day. He did not perform a lot of lifting and the remainder of the day he would attend briefing.  Ms. Kuuttila testified that the inventory clerk/analyst was defined as sedentary.

Tr. at 23.  However, Wilkes's claim that these apparently conflicting statements render the opinion impermissibly vague is challenged by language that appears later in the ALJ's step-four determination:

> Based on the [ALJ's] determination of the claimant's residual functional capacity, the vocational expert testified that the claimant would be able to perform the

>   requirements of [the inventory clerk/analyst job], based either on his own description of the duties of the job or those that appear in the DOT. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of his work as an inventory clerk/analyst, the undersigned finds that the claimant is able to perform this work as actually performed, per the vocational expert's testimony.

Tr. at 24. While the ALJ's description of Kuuttila's testimony as regards the work level required by an inventory clerk/analyst position is less than elegant, her analysis as a whole "shows clearly how specific evidence"–here, the vocational expert's testimony–"leads to a conclusion"–here, that Wilkes is able to perform the work as an inventory clerk/analyst as actually performed. SSR 82-62, 1982 WL 31386. Therefore, the ALJ's step-four analysis was not inherently unclear, and the decision was issued in compliance with SSR 82-62.

Wilkes's argument that the ALJ failed to reconcile a significant discrepancy stems from testimony given by Wilkes at the administrative hearing following Kuuttila's testimony. After Kuuttila testified that Wilkes defined the work level required for the inventory clerk/analyst position as "sedentary," Wilkes was reexamined by his attorney and gave the following testimony :

>   [ATTY.:]     Mr. Wilkes, in respect to your Honeywell job . . . [w]hat was the percentage of the day that you were sitting, what was the percentage of the day that you were on your feet? And what were you, what were you doing?
>
>   [WILKES:]    The Honeywell job was probably about six hours at the desk. . . .
>
>   [ATTY.:]     And what's the heaviest weight that you lifted at that job?
>
>   [WILKES:]    That was–
>
>   [ATTY.:]     And what were you lifting and carrying?
>
>   [WILKES:]    It wasn't a whole lot. If I had to lift anything at all, it would have to be going down to the motor pool, just maybe help somebody move some new cases that had been issued, or something like that. But not–

[ATTY.:]   How much–

[WILKES:]  –a whole lot.  A lot of that was–the other few hours would be going to brief some military personnel on the equipment that they were going to receive, what they needed to do as far as hand receive transactions.

[ATTY.:]   And what–you said you lifted cases though at times.

[WILKES:]  Yeah.

[ATTY.:]   How much were those cases?  How much did those cases weigh?

[WILKES:]  I'm thinking the cases are probably around 50 pounds and up, depending on what was being issued.  If it was tools for a track, those are usually heavy if it came in a wooden crate. . . . Electronic equipment was probably 40 pounds.

Tr. at 54-55.  Wilkes notes that the ALJ found that Wilkes' had the residual functional capacity to could lift or carry twenty pounds occasionally and ten pounds frequently.  Tr. at 20.  But this testimony shows that the inventory clerk/analyst position as actually performed required lifting "50 pounds and up."  As such, Wilkes argues, his residual functional capacity renders him incapable of performing his prior work.  Moreover, he argues, because the ALJ did not explicitly refer to this testimony in her decision, the ALJ failed to reconcile a significant disparity in the record, which renders the decision deficient under the terms of SSR 82-62.

As Wilkes notes, irrespective of this Court's determination as to whether this testimony introduced a significant inconsistency requiring reconciliation by the ALJ, an ALJ's ruling will be reversed and remanded only where the aggrieved party demonstrates prejudice.  *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981).  To properly demonstrate prejudice, a party must show that the error was harmful because it resulted in a determination by the ALJ that is unsupported by substantial evidence.  *See Morris v. Bowen*, 864 F.2d 333, at 336 (5th Cir. 1988) (per curiam).

In other words, an error in this context is harmless if, "had the ALJ explicitly addressed this issue, the ALJ's conclusion would not have changed." *Foster v. Astrue*, No. A-06-CA-852 AWA, 2007 WL 2729363, at *2 (W.D. Tex. Sept. 18, 2007).

The fact that the ALJ did not explicitly address Wilkes's later testimony that he occasionally helped to lift boxes of 50 pounds or more did not result in prejudice against Wilkes because the ALJ's disability determination is amply supported by substantial evidence. Vocational expert Kuuttila's determination that Wilkes had the residual functional capacity to work as an inventory clerk/analyst as the position was actually performed–which the ALJ relied upon in making her decision–went unchallenged by Wilkes's attorney at his hearing. Furthermore, Wilkes's Work History Report explicitly noted that his job as an inventory clerk/analyst did not require any lifting. Tr. at 164. Finally, Wilkes's own testimony indicates that the inventory clerk/analyst job was mostly dedicated to working at a computer and briefing military personnel on the equipment they were about to receive: if he lifted anything at all, it was to "help somebody move some new cases" which he "thought" were "probably around 50 pounds and up." *Id*. at 55.

Given the strength of the evidence supporting the ALJ's determination, as well as the imprecise nature of Wilkes's testimony, the ALJ likely implicitly dismissed Wilkes's later testimony as not credible. Thus, as the decision was supported by substantial evidence, and explicitly addressing the issue would not have changed the ALJ's determination, even if the ALJ failed to reconcile a significant inconsistency in the record, such failure did not result in prejudice to Wilkes. The Court therefore recommends that the Commissioner's determination be affirmed.

Finally, Wilkes's arguments that the *Chenery* doctrine precludes this court from considering evidence in the record not explicitly mentioned in the ALJ's decision—specifically Wilkes's Work

8

History Report—is meritless, for two reasons.  First, *Chenery* stands for the proposition that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the *grounds invoked by the agency*." *Securities and Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 196 (1947) (emphasis added).  The grounds invoked by the ALJ in reaching her decision—that Wilkes was not disabled because he had the requisite residual functional capacity to work as an inventory clerk/analyst—are identical to the grounds invoked by this Court in reaching its decision.  This Court's use of additional evidence from the record, by itself, does not differentiate the grounds invoked by the Court from the grounds invoked by the ALJ. *Chenery*'s admonitions against post-hoc rationalizations are therefore inapposite.

Second, the standard of review endorsed by Wilkes runs contrary to the statutory requirements outlined by 42 U.S.C. § 405(g), which gives this Court the power to enter a judgment based "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g).  Furthermore, this standard would preclude this Court from adhering to its common-law duty to affirm the Commissioner's decision where it is supported by substantial evidence in the record simply because the ALJ did not explicitly mention this evidence in her decision. *See Sedler*, 914 F.2d at 617.  As such, Wilkes's claim that this Court may base its decision solely on the evidence used in the ALJ's decision is rejected.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ applied the proper legal standards to Wilkes's case, and that her findings are supported by substantial evidence in the record.  The decision of the Commissioner of the Social Security Administration is therefore **AFFIRMED**.

SIGNED this 18 day of August, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE